David R. Shoop (SBN: 220576)
Thomas S. Alch (SBN: 136860)
**SHOOP | A PROFESSIONAL LAW CORPORATION**
9701 Wilshire Blvd., Suite 950
Beverly Hills, CA 90212
Telephone: (310) 620-9533
Facsimile: (310) 620-6330
david.shoop@shooplaw.com
thomas.alch@shooplaw.com

Counsel for Plaintiffs DAISYE SUDURAN, as Natural Parent and Guardian of the minor, O.S.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAISYE SUDURAN, as Natural Parent and Guardian of the minor, O.S. <br><br>        Plaintiff, <br><br> vs. <br><br> BRAINSPARK LLC (a California Corporation); and AMAZON.COM SERVICES LLC <br><br>        Defendants. | Case No. <br><br> **COMPLAINT** <br><br> **DEMAND FOR JURY TRIAL** |

Plaintiff, DAISYE SUDURAN, as Natural Parent and Guardian of the Minor, O.S., hereby complains and alleges by way of her undersigned counsel, causes of action against Defendants, and each of them, as follows:

## THE PARTIES

1.   At all times herein mentioned, Defendant, BRAINSPARK LLC (hereinafter

1

also referred to as "BRAINSPARK" or collectively with all other defendants as "DEFENDANTS" or "Defendants,") was and is a California entity with its principal place of business in Oak Park, California, and is subject to the jurisdiction of this court. BRAINSPARK LLC is and was authorized to conduct business in the State of California and continues to do so. BRAINSPARK LLC has done and continues to do business as BRAINSPARK LLC.

2. At all times herein mentioned, Defendant, AMAZON.COM SERVICES LLC (hereinafter also referred to as "AMAZON" or collectively with all other defendants as "DEFENDANTS" or "Defendants,") was and is a Delaware entity with its principal place of business in Seattle, Washington, and is subject to the jurisdiction of this court. AMAZON.COM SERVICES LLC is and was authorized to conduct business in the State of California and continues to do so. AMAZON.COM SERVICES LLC has done and continues to do business as AMAZON.COM SERVICES LLC.

3. At all times herein mentioned, Minor Plaintiff, O.S. (hereinafter also referred to as "PLAINTIFF," "O.S." was and is a resident and citizen of the State of Louisiana, domiciled in the city of Mandeville, St. Tammany Parish, Louisiana.

4. At all times mentioned herein, Defendants, BRAINSPARK LLC; and AMAZON.COM SERVICES LLC (collectively referred to as "Defendants" or "DEFENDANTS") were and now are engaged in the business of formulating,

2

COMPLAINT

researching, developing, manufacturing, fabricating, designing, producing, creating, modifying, labeling, assembling, testing, distributing, leasing, buying, selling, supplying, inspecting, servicing, repairing, advertising, marketing, promoting, warranting, re-branding, manufacturing for others, packaging, providing use instructions and warnings for, and conducting post-sale monitoring for the DigitBlocks, (at times hereinafter referred to as "Subject Product," "Subject DigitBlocks," or "DigitBlocks").

5. At all times herein mentioned each of the Defendants was the agent and employee of each of the remaining defendants, and in doing the things herein alleged, was acting within the course and scope of such agency and employment and with the permission and consent of, and their actions were ratified by the other DEFENDANTS. Each of the fictitiously-named defendants is responsible in some manner for the occurrences herein alleged and Plaintiff's damages as herein alleged were legally and proximately caused by those defendants.

6. At all times herein mentioned, each of the Defendants was the agent, servant, employee and/or joint venturer of each of the other Defendants and at all said times, each Defendant was acting in the full course and scope of said agency, service, employment and/or joint venture.

7. Each of the Defendants sued herein is responsible in some manner for the

COMPLAINT

events and happenings herein referred to, thereby legally causing the injuries and damages to the PLAINTIFF as herein alleged.

8. Defendants, and each of them, with despicable conduct and a conscious and reckless disregard for the safety of others, designed, manufactured, tested marketed and/or sold the Subject Product, which was dangerous and defective in that each of the forty-eight (48) plastic blocks contained eight (8) powerful magnets, but Defendants, and each of them, failed to restrict access to the magnets, failed to issue appropriate warnings and instructions, and failed to properly test the blocks to make sure the magnets were secured, failed to have a preventative action plan should a plastic block break resulting in the magnets becoming dislodged adequately protect and hold the rare earth magnets, and failed to properly seal the plastic blocks to prevent magnets from escaping.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over this case pursuant to 28 U.S.C. §1332(a)(1) as the amount in controversy exceeds $75,000.00 and the parties are citizens of different sates.

10. This Court has jurisdiction over this matter because Defendant, BRAINSPARK, is a citizen of California, is incorporated in California and has its principal place of business in Oak Park, California, and previously in Irvine, California.

4

COMPLAINT

11. Defendants, BRAINSPARK and AMAZON developed the Subject Product in California.

12. Defendants, BRAINSPARK and AMAZON designed the Subject Product in California.

13. Defendants, BRAINSPARK and AMAZON tested the Subject Product in California.

14. Defendants, BRAINSPARK and AMAZON manufactured the Subject Product in California.

15. Defendants, BRAINSPARK and AMAZON contracted in California to market the Subject Product.

16. Defendants, BRAINSPARK and AMAZON developed the marketing plan and advertising for the Subject Product in California.

17. Defendants, BRAINSPARK and AMAZON created the warnings for the Subject Product in California.

18. Defendants, BRAINSPARK and AMAZON created the use instructions for the Subject Product in California.

19. Defendants, BRAINSPARK and AMAZON created the Amazon Store for the Subject Product in California.

20. Defendants, BRAINSPARK and AMAZON stored and maintained the Subject Product in California for distribution.

COMPLAINT

21. Defendants, BRAINSPARK and AMAZON sold and shipped the Subject Product from California.

22. Defendants, BRAINSPARK and AMAZON created the TikTok Channel for the Subject Product in California.

23. Defendants, BRAINSPARK and AMAZON conducted the financial transactions for the sale, marketing, warehousing and shipping of the Subject Product in California.

24. Defendants, AMAZON, purposefully directed their activities to California with regard to the Subject Product as set forth in the previous paragraphs

25. Pursuant to 28 U.S.C. § 1391(b)(1) venue is proper in the United States District Court, Central District of California as Defendant, BRAINSPARK LLC, resides in Oak Park, California in the County of Ventura.

26. Pursuant to 28 U.S.C. § 1391(b)(2) venue is proper in the United States District Court, Central District of California as a substantial part of the events, acts and omissions occurred within the subject district.

## **FACTUAL BACKGROUND**

27. On or about June 20, 2022, Minor Plaintiff, (age 8 at the time), was using the Subject product in the manner intended, instructed and reasonably foreseeable to Defendants, and each of them when the Subject Product failed and released the

COMPLAINT

magnetic balls from inside of the plastic block/cube. Minor Plaintiff inadvertently ingested four of the magnetic balls.

28. A laparotomy under general anesthesia was performed. Intraoperatively it was found that Minor Plaintiff's jejunum (part of the small intestine) had been perforated by the magnets. Three of the magnetic balls had migrated from the small intestine and one remained.

29. Minor Plaintiff was hospitalized for several days and subsequently developed a surgical site infection requiring further treatment and wound care.

30. Minor Plaintiff's injuries were predictable, and preventable, had Defendants, and each of them, not acted with a despicable, willful and conscious disregard for the rights and safety of others, including the minor Plaintiff. Prior to O.S.'s injuries, there existed over fifteen (15) years of literature, and over thirty (30) Consumer Product Safety Commission Safety Alerts and Recalls regarding the damagers of magnets in children's toys, and the dangers of magnet ingestion.

31. In January 2007, the Consumer Product Safety Commission (hereinafter "CPSC") issued a Safety Alert entitled: "HIGH-POWERED MAGNETS AND CHILDREN A DEADLY MIX," stating that "Toddlers, tweens and teens have suffered severe injuries or death after ingesting multiple magnets." The CPSC further warned that "Swallowed magnets can attract through intestinal tissue, clamping together and causing tissue injury or tissue death. Magnets can also

7

COMPLAINT

burrow through intestinal walls, creating blockages or life-threatening infections. Many children have been rushed into surgery to remove multiple magnets from their gastrointestinal tracts and a 19-month-old girl tragically died after ingesting magnets." With despicable, willful and conscious disregard for the rights and safety of others, Defendants, and each of them, willfully and consciously disregarded this Safety Alert or, with a willful and conscious disregard for the safety of others, failed as designers, manufacturers, sellers, distributors, testers and marketers of children's toys to make themselves aware of said Safety Alert.

32. On January 18, 2007, the CPSC issued a Recall Alert for MagnaBlocks warning that: "Magnets found by young children can be swallowed or aspirated. If more than one magnet is swallowed, the magnets can attract each other and cause intestinal perforations or blockages, which can be fatal." With despicable, willful and conscious disregard for the rights and safety of others, Defendants, and each of them, willfully and consciously disregarded this Recall Alert or, with a willful and conscious disregard for the safety of others, failed as designers, manufacturers, sellers, distributors, testers and marketers of children's toys to make themselves aware of said consumer product Recall Alert.

33. On February 15, 2007, the CPSC issued a Recall Alert for Link-N-Lite Magnetic Puzzles warning that: "Magnets found by young children can be swallowed or aspirated. If more than one magnet is swallowed, the magnets can attract each

8

COMPLAINT

other and cause intestinal perforations or blockages, which can be fatal." With despicable, willful and conscious disregard for the rights and safety of others, Defendants, and each of them, willfully and consciously disregarded this Recall Alert or, with a willful and conscious disregard for the safety of others, failed as designers, manufacturers, sellers, distributors, testers and marketers of children's toys to make themselves aware of said consumer product Recall Alert.

34. In April 2007, the CPSC issued a Safety Alert entitled: "INGESTED MAGNETS CAN CAUSE SERIOUS INTESTINAL INJURIES." The CPSC warned that "Small magnets… can kill children if two or more are swallowed." The CPSC stated that it "is aware of at least 33 cases of children being injured from ingesting magnets. A 20-month-old died, and at least 19 other children from 10 months to 11 years required surgery to remove ingested magnets." The CPSC further warned that: If two or more magnets or magnetic components or a magnet and another metal object (such as a small metal ball) are swallowed separately, they can attract to one another through intestinal walls. This traps the magnets in place and can cause holes (perforations), twisting and/or blockage of the intestines, infection, blood poisoning (sepsis), and death." With despicable, willful and conscious disregard for the rights and safety of others, Defendants, and each of them, willfully and consciously disregarded this Safety Alert or, with a willful and conscious disregard for the safety of others, failed as designers,

COMPLAINT

manufacturers, sellers, distributors, testers and marketers of children's toys to make themselves aware of said Safety Alert.

35. On May 3, 2007, the CPSC issued a Recall Alert for IQ Pre School Take-Apart Townhouse warning that: "Magnets found by young children can be swallowed or aspirated. If more than one magnet is swallowed, the magnets can attract each other and cause intestinal perforations or blockages, which can be fatal." With despicable, willful and conscious disregard for the rights and safety of others, Defendants, and each of them, willfully and consciously disregarded this Recall Alert or, with a willful and conscious disregard for the safety of others, failed as designers, manufacturers, sellers, distributors, testers and marketers of children's toys to make themselves aware of said consumer product Recall Alert.

36. On August 14, 2007, the CPSC issued a Recall Alert for an Expanded Recall of Polly Pocket Play Sets warning that: "Magnets found by young children can be swallowed or aspirated. If more than one magnet is swallowed, the magnets can attract each other and cause intestinal perforations or blockages, which can be fatal."  Additionally, the CPSC reported that "There had been three reports of serious injuries to children who swallowed more than one magnet. All three suffered intestinal perforations that required surgery."  With despicable, willful and conscious disregard for the rights and safety of others, Defendants, and each of them, willfully and consciously disregarded this Reacll Alert or, with a willful

COMPLAINT

and conscious disregard for the safety of others, failed as designers, manufacturers, sellers, distributors, testers and marketers of children's toys to make themselves aware of said consumer product Recall Alert.

37. On August 14, 2007, the CPSC issued a Recall Alert for Doggie Day Care Play Sets a warning that: "Magnets found by young children can be swallowed or aspirated. If more than one magnet is swallowed, the magnets can attract each other and cause intestinal perforations or blockages, which can be fatal." With despicable, willful and conscious disregard for the rights and safety of others, Defendants, and each of them, willfully and consciously disregarded this Recall Alert or, with a willful and conscious disregard for the safety of others, failed as designers, manufacturers, sellers, distributors, testers and marketers of children's toys to make themselves aware of said consumer product Recall Alert.

38. On August 14, 2007, the CPSC issued a Recall Alert for Barbie and Tanner Magnetic Toys warning that: "Magnets found by young children can be swallowed or aspirated. If more than one magnet is swallowed, the magnets can attract each other and cause intestinal perforations or blockages, which can be fatal." With despicable, willful and conscious disregard for the rights and safety of others, Defendants, and each of them, willfully and consciously disregarded this Recall Alert or, with a willful and conscious disregard for the safety of others,

COMPLAINT

failed as designers, manufacturers, sellers, distributors, testers and marketers of children's toys to make themselves aware of said consumer product Recall Alert.

39. On August 14, 2007, the CPSC issued a Recall Alert for Batman Magnetic Toy warning that: "Magnets found by young children can be swallowed or aspirated. If more than one magnet is swallowed, the magnets can attract each other and cause intestinal perforations or blockages, which can be fatal." With despicable, willful and conscious disregard for the rights and safety of others, Defendants, and each of them, willfully and consciously disregarded this Recall Alert or, with a willful and conscious disregard for the safety of others, failed as designers, manufacturers, sellers, distributors, testers and marketers of children's toys to make themselves aware of said consumer product Recall Alert.

40. On October 27, 2007, the CPSC issued a Recall Alert for Magnetic Game Pieces sold with Cars Backpacks warning that: "Magnets found by young children can be swallowed or aspirated. If more than one magnet is swallowed, the magnets can attract each other and cause intestinal perforations or blockages, which can be fatal."  With despicable, willful and conscious disregard for the rights and safety of others, Defendants, and each of them, willfully and consciously disregarded this Recall Alert or, with a willful and conscious disregard for the safety of others, failed as designers, manufacturers, sellers, distributors, testers

COMPLAINT

and marketers of children's toys to make themselves aware of said consumer product Recall Alert.

41. On January 23, 2008, the CPSC issued a Recall Alert for Battatt MagnaBild Magnetic Building Systems Additional Magnetic Figures Toys warning that: "Magnets found by young children can be swallowed or aspirated. If more than one magnet is swallowed, the magnets can attract each other and cause intestinal perforations or blockages, which can be fatal." With despicable, willful and conscious disregard for the rights and safety of others, Defendants, and each of them, willfully and consciously disregarded this Recall Alert or, with a willful and conscious disregard for the safety of others, failed as designers, manufacturers, sellers, distributors, testers and marketers of children's toys to make themselves aware of said consumer product Recall Alert.

42. On February 22, 2008, the CPSC issued a Recall Alert Fun 'N Safe Magnetic Dart Boards warning that: "Magnets found by young children can be swallowed or aspirated. If more than one magnet is swallowed, the magnets can attract each other and cause intestinal perforations or blockages, which can be fatal." With despicable, willful and conscious disregard for the rights and safety of others, Defendants, and each of them, willfully and consciously disregarded this Recall Alert or, with a willful and conscious disregard for the safety of others, failed as

COMPLAINT

designers, manufacturers, sellers, distributors, testers and marketers of children's toys to make themselves aware of said consumer product Recall Alert.

43. On March 13, 2008, the CPSC issued a Recall Alert for MagnaBild Magnetic Figures Toys warning that: "Magnets found by young children can be swallowed or aspirated. If more than one magnet is swallowed, the magnets can attract each other and cause intestinal perforations or blockages, which can be fatal."  With despicable, willful and conscious disregard for the rights and safety of others, Defendants, and each of them, willfully and consciously disregarded this Recall Alert or, with a willful and conscious disregard for the safety of others, failed as designers, manufacturers, sellers, distributors, testers and marketers of children's toys to make themselves aware of said consumer product Recall Alert.

44. On March 13, 2008, the CPSC issued a Recall Alert for Battatt Additional Magnetic Figures Toys warning that: "Magnets found by young children can be swallowed or aspirated. If more than one magnet is swallowed, the magnets can attract each other and cause intestinal perforations or blockages, which can be fatal."  With despicable, willful and conscious disregard for the rights and safety of others, Defendants, and each of them, willfully and consciously disregarded this Recall Alert or, with a willful and conscious disregard for the safety of others, failed as designers, manufacturers, sellers, distributors, testers and marketers of children's toys to make themselves aware of said consumer product Recall Alert.

COMPLAINT

45. On March 17, 2008, the CPSC issued a Recall Alert for Magtastik and Magnetiks Jr. Pre School Toys, warning that: "Magnets found by young children can be swallowed or aspirated. If more than one magnet is swallowed, the magnets can attract each other and cause intestinal perforations or blockages, which can be fatal." With despicable, willful and conscious disregard for the rights and safety of others, Defendants, and each of them, willfully and consciously disregarded this Recall Alert or, with a willful and conscious disregard for the safety of others, failed as designers, manufacturers, sellers, distributors, testers and marketers of children's toys to make themselves aware of said consumer product Recall Alert.

46. On March 17, 2008, the CPSC issued a recall Alert for MagnaMan Magnetic Figures Toys warning that: "Magnets found by young children can be swallowed or aspirated. If more than one magnet is swallowed, the magnets can attract each other and cause intestinal perforations or blockages, which can be fatal." With despicable, willful and conscious disregard for the rights and safety of others, Defendants, and each of them, willfully and consciously disregarded this Recall Alert or, with a willful and conscious disregard for the safety of others, failed as designers, manufacturers, sellers, distributors, testers and marketers of children's toys to make themselves aware of said consumer product Recall Alert.

47. On April 8, 2008, the CPSC issued a Recall Alert for Fun 'N Games Magnetic Dart Boards by Henry Gordy, warning that: Magnets found by young children

COMPLAINT

can be swallowed or aspirated. If more than one magnet is swallowed, the magnets can attract each other and cause intestinal perforations or blockages, which can be fatal." With despicable, willful and conscious disregard for the rights and safety of others, Defendants, and each of them, willfully and consciously disregarded this Recall Alert or, with a willful and conscious disregard for the safety of others, failed as designers, manufacturers, sellers, distributors, testers and marketers of children's toys to make themselves aware of said consumer product Recall Alert.

48. On May 27, 2010, the CPSC issued a Recall Alert for Buckyballs High Powered Magnets Sets, warning that "If more than one magnet is swallowed, the magnets can attract each other and cause intestinal perforations or blockages, which can be fatal." With despicable, willful and conscious disregard for the rights and safety of others, Defendants, and each of them, willfully and consciously disregarded this Recall Alert or, with a willful and conscious disregard for the safety of others, failed as designers, manufacturers, sellers, distributors, testers and marketers of children's toys to make themselves aware of said consumer product Recall Alert.

49. On November 21, 2011, the CPSC issued a Recall Alert for Jo-Ann Fabrics' Foam Pumpkin Turkey Craft Kit which contained magnets warning that: "when two or more magnets are swallowed, they can link together inside the intestines

16

COMPLAINT

and clamp onto body tissues, causing intestinal obstructions, perforations, sepsis and death. Internal injury from magnets can pose serious lifelong health effects." With despicable, willful and conscious disregard for the rights and safety of others, Defendants, and each of them, willfully and consciously disregarded this Recall Alert or, with a willful and conscious disregard for the safety of others, failed as designers, manufacturers, sellers, distributors, testers and marketers of children's toys to make themselves aware of said consumer product Recall Alert.

50. On June 5, 2012, the North American Society for Pediatric Gastroenterology, Hepatology and Nutrition (hereinafter "NASPGHAN") gave a full day presentation to the Consumer Product Safety Commission entitled: "High-Powered Magnet Ingestions by Children." It was reported that: "Reports of neodymium magnetic ingestions surfaced in 2002. From 2003 to 2006, 20 cases of children with magnet ingestion and injury were reported by the Center for Disease Control. The U.S Consumer Products Safety Commission (USCPSC) issued a warning in 2007, after it documented one death of a child following ingestion of such magnets, as well as 33 other cases of injury. An informal survey of NASPGHAN members in April 2012 identified more than 80 magnet ingestions, requiring 29 endoscopies, 27 surgeries, and 28 bowel perforations." With despicable, willful and conscious disregard for the rights and safety of others, Defendants, and each of them, willfully and consciously disregarded this

COMPLAINT

presentation or, with a willful and conscious disregard for the safety of others, failed as designers, manufacturers, sellers, distributors, testers and marketers of children's toys to make themselves aware of said presentation to the CPSC.

51. On December 10, 2012, the CPSC issued a Recall Alert for Reiss Innovations High Powered Magnet, warning that: "When two or more magnets are swallowed, they can link together inside a child's intestines and clamp onto body tissues, causing intestinal obstructions, perforations, sepsis and death. Internal injury from magnets can pose serious lifelong health effects." With despicable, willful and conscious disregard for the rights and safety of others, Defendants, and each of them, willfully and consciously disregarded this Recall Alert or, with a willful and conscious disregard for the safety of others, failed as designers, manufacturers, sellers, distributors, testers and marketers of children's toys to make themselves aware of said consumer product Recall Alert.

52. On January 31, 2013, the CPSC issued a Recall Alert for Nanosphere Magnetic Desk Toys, warning that: "If two or more magnets are swallowed, they can link together inside a child's intestines and clamp onto body tissues, causing intestinal obstructions, perforations, sepsis and death. Internal injury from magnets can pose serious lifelong health effects." With despicable, willful and conscious disregard for the rights and safety of others, Defendants, and each of them, willfully and consciously disregarded this Recall Alert or, with a willful and

COMPLAINT

conscious disregard for the safety of others, failed as designers, manufacturers, sellers, distributors, testers and marketers of children's toys to make themselves aware of said consumer product Recall Alert.

53. On January 31, 2013, the CPSC issued a Recall Alert for SCS Direct Magnet Balls Manipulative Magnet Sets, warning that: "When two or more magnets are swallowed, they can link together inside a child's intestines and clamp onto body tissues, causing intestinal obstructions, perforations, sepsis and death. Internal injury from magnets can pose serious lifelong health effects." With despicable, willful and conscious disregard for the rights and safety of others, Defendants, and each of them, willfully and consciously disregarded this Recall Alert or, with a willful and conscious disregard for the safety of others, failed as designers, manufacturers, sellers, distributors, testers and marketers of children's toys to make themselves aware of said consumer product Recall Alert.

54. On April 5, 2013, the CPSC issued a Recall Alert for ToysRUs Buckyballs High-Powered Magnet Sets, warning that: "When two or more magnets are swallowed, they can link together inside a child's intestines and clamp onto body tissues, causing intestinal obstructions, perforations, sepsis and death. Internal injury from magnets can pose serious lifelong health effects." With despicable, willful and conscious disregard for the rights and safety of others, Defendants, and each of them, willfully and consciously disregarded this Recall Alert or, with a willful

19

COMPLAINT

and conscious disregard for the safety of others, failed as designers, manufacturers, sellers, distributors, testers and marketers of children's toys to make themselves aware of said consumer product Recall Alert.

55. On April 5, 2013, the CPSC issued a Recall Alert for Overstock.com Buckyballs High Powered Magnet Sets, warning that: "When two or more magnets are swallowed, they can link together inside a child's intestines and clamp onto body tissues, causing intestinal obstructions, perforations, sepsis and death. Internal injury from magnets can pose serious lifelong health effects." With despicable, willful and conscious disregard for the rights and safety of others, Defendants, and each of them, willfully and consciously disregarded this Recall Alert or, with a willful and conscious disregard for the safety of others, failed as designers, manufacturers, sellers, distributors, testers and marketers of children's toys to make themselves aware of said consumer product Recall Alert.

56. On June 7, 2013, the CPSC issued a Recall Alert of High Powered magnets distributed with an Adobe Connect promotional package, warning that: "When two or more magnets are swallowed, they can link together inside a child's intestines and clamp onto body tissues, causing intestinal obstructions, perforations, sepsis and death. Internal injury from magnets can pose serious lifelong health effects." With despicable, willful and conscious disregard for the rights and safety of others, Defendants, and each of them, willfully and

COMPLAINT

consciously disregarded this Recall Alert or, with a willful and conscious disregard for the safety of others, failed as designers, manufacturers, sellers, distributors, testers and marketers of children's toys to make themselves aware of said consumer product Recall Alert.

57. On April 6, 2014, the CPSC issued a Recall Alert of Rubber Ducky Magnets, warning that magnets "If swallowed, magnets can link together inside a child's intestines and clamp onto body tissues, causing intestinal obstructions, perforations, sepsis and death. Internal injury from magnets can pose serious lifelong health effects." With despicable, willful and conscious disregard for the rights and safety of others, Defendants, and each of them, willfully and consciously disregarded this Recall Alert or, with a willful and conscious disregard for the safety of others, failed as designers, manufacturers, sellers, distributors, testers and marketers of children's toys to make themselves aware of said consumer product Recall Alert.

58. On September 10, 2015, the CPSC issued a Recall Alert for Juratoys Fishing Games warning that: "the small magnet inside the worm can liberate. Swallowing multiple magnets can result in serious internal injury." With despicable, willful and conscious disregard for the rights and safety of others, Defendants, and each of them, willfully and consciously disregarded this Recall Alert or, with a willful and conscious disregard for the safety of others, failed as designers,

COMPLAINT

manufacturers, sellers, distributors, testers and marketers of children's toys to make themselves aware of said consumer product Recall Alert.

59. On August 4, 2016, the CPSC issued a Recall Alert for Cinmar Magnetic World Travel Maps, warning that: "when two or more magnets…are swallowed, they can link together inside the intestines and clamp onto body tissues, causing intestinal obstructions, perforations, sepsis and death. Internal injury from magnets can pose serious lifelong health effects."  With despicable, willful and conscious disregard for the rights and safety of others, Defendants, and each of them, willfully and consciously disregarded this Recall Alert or, with a willful and conscious disregard for the safety of others, failed as designers, manufacturers, sellers, distributors, testers and marketers of children's toys to make themselves aware of said consumer product Recall Alert.

60. On August 5, 2016, the CPSC issued a Recall Alert for Disney's gadget Pencil Cases which contained two magnets, warning that: "[w]hen these two magnets are swallowed, they can link together inside a child's intestines and result in serious internal injuries." With despicable, willful and conscious disregard for the rights and safety of others, Defendants, and each of them, willfully and consciously disregarded this Recall Alert or, with a willful and conscious disregard for the safety of others, failed as designers, manufacturers, sellers,

COMPLAINT

distributors, testers and marketers of children's toys to make themselves aware of said consumer product Recall Alert.

61. On March 29, 2017, the CPSC issued a Recall Alert for Target's Magnetic Tic-Tac-Toe games warning that: "when two or more magnets are swallowed, they can link together inside the intestines and clamp onto body tissues, causing intestinal obstructions, perforations, sepsis and death. Internal injury from magnets can pose serious lifelong health effects," in addition to being a choking hazard. With despicable, willful and conscious disregard for the rights and safety of others, Defendants, and each of them, willfully and consciously disregarded this Recall Alert or, with a willful and conscious disregard for the safety of others, failed as designers, manufacturers, sellers, distributors, testers and marketers of children's toys to make themselves aware of said consumer product Recall Alert.

62. On May 7, 2020, the CPSC issued a recall Sobeauty "Mag Cube" Magnetic Ball Sets which contained 216 spherical high powered magnets warning that : "when two or more high powered magnets are swallowed, they can link together inside a child's intestines and clamp onto body tissues, causing intestinal obstruction, perforations, sepsis and death." With despicable, willful and conscious disregard for the rights and safety of others, Defendants, and each of them, willfully and consciously disregarded this Recall Alert or, with a willful and conscious disregard for the safety of others, failed as designers, manufacturers, sellers,

COMPLAINT

distributors, testers and marketers of children's toys to make themselves aware of said consumer product Recall Alert.

63. On March 17, 2022, the CPSC and the Defendants themselves, issued a Recall Alert for the toy DigitDots 3mm and 5mm Magnetic Balls, warning that "[w]hen two or more high-powered magnets are swallowed, either intentionally by younger children or accidentally by older children, the ingested magnets can attract to ach other, or to another metal object, and become lodged in the digestive system. This can result in perforations, twisting and/or blockage of the intestines, infection, blood poisoning and death."   With despicable, willful and conscious disregard for the rights and safety of others, Defendants, and each of them, willfully and consciously disregarded this Recall Alert or, with a willful and conscious disregard for the safety of others, failed as designers, manufacturers, sellers, distributors, testers and marketers of children's toys to make themselves aware of said consumer product Recall Alert.

64. Prior to O.S.'s injuries, Defendants, and each of them were placed on written notice and had received negative product reviews for their DigitBlocks from consumers indicating that the blocks "can break pretty easy," and that "the plastic broke off and the little metal magnet ball [was] exposed." With despicable, willful and conscious disregard for the rights and safety of others, Defendants,

24

COMPLAINT

and each of them, willfully and consciously disregarded these written notices and negative reviews.

65. In May, 2022, Defendants, and each of them, with despicable, willful and conscious disregard for the rights and safety of others, willfully and consciously disregarded written notices and reviews documenting that DigitBlocks break open and expose magnets, 2 prior CPSC Safety Alerts, 29 prior CPSC Recall Alerts, the NASPGHAN presentation, and myriad medical articles regarding the dangers of ingested magnets, or, with despicable, willful and conscious disregard for the rights and safety of others, failed as designers, manufacturers, sellers, distributors, testers and marketers of children's toys, to make themselves aware of the 2 prior CPSC Safety Alerts, 29 prior CPSC Recall Alerts, the NASPGHAN presentation, and myriad medical articles regarding the dangers of ingested magnets, manufactured, fabricated, designed, tested, modified, labeled, assembled, distributed, offered for sale, supplied, sold, inspected, marketed, and advertised the DigitBlocks with 48 plastic blocks, each containing 8 magnetic balls, for a total of 384 magnetic balls, and sold the Subject product to Minor Plaintiff's mother, Daisye Suduran.

66. Defendants, and each of them, with despicable conduct and a willful and conscious disregard for the safety of consumers, intentionally misrepresented to Plaintiff's mother with the intention of depriving Plaintiff of his legal rights and

25

COMPLAINT

property that the Subject DigitBlocks were "Perfect for Boys and Girls: Toddlers, Preschool ages 3 4 5 year old, kids ages 4-8, Kids ages 8-Adult," when the Defendants, and each of them, concealed their knowledge of written notices and reviews documenting that DigitBlocks break open and expose magnets, 2 prior CPSC Safety Alerts, 29 prior CPSC Recall Alerts, the NASPGHAN presentation, and myriad medical articles regarding the dangers of children ingesting magnets from their toys.

67. Defendants, and each of them, with despicable conduct and a willful and conscious disregard for the safety of consumers, intentionally misrepresented to Plaintiff's mother with the intention of depriving Plaintiff of his legal rights and property that the Subject DigitBlocks were "designed to ensure safety for young children, and reduce risk," when the Defendants, and each of them, concealed their knowledge of written notices and reviews documenting that DigitBlocks break open and expose magnets, 2 prior CPSC Safety Alerts, 29 prior CPSC Recall Alerts, the NASPGHAN presentation, and myriad medical articles regarding the dangers of children ingesting magnets from their toys.

68. Defendants, and each of them, with despicable conduct and a willful and conscious disregard for the safety of consumers, intentionally misrepresented to Plaintiff's mother with the intention of depriving Plaintiff of his legal rights and property that the Subject DigitBlocks' "[m]agents are sealed securely," when

COMPLAINT

the Defendants, and each of them, concealed their knowledge of written notices and reviews documenting that DigitBlocks break open and expose magnets, 2 prior CPSC Safety Alerts, 29 prior CPSC Recall Alerts, the NASPGHAN presentation, and myriad medical articles regarding the dangers of children ingesting magnets from their toys.

69. Defendants, and each of them, with despicable conduct and a willful and conscious disregard for the safety of consumers, intentionally misrepresented to Plaintiff's mother with the intention of depriving Plaintiff of his legal rights and property that the Subject DigitBlocks had "Safe, Strong, Built-in Magnets," when the Defendants, and each of them, concealed their knowledge of written notices and reviews documenting that DigitBlocks break open and expose magnets, 2 prior CPSC Safety Alerts, 29 prior CPSC Recall Alerts, the NASPGHAN presentation, and myriad medical articles regarding the dangers of children ingesting magnets from their toys.

70. Defendants, and each of them, with despicable conduct and a willful and conscious disregard for the safety of consumers, intentionally misrepresented to Plaintiff's mother with the intention of depriving Plaintiff of his legal rights and property that the Subject DigitBlocks were designed for children "Ages 3+," when the Defendants, and each of them, concealed their knowledge of written notices and reviews documenting that DigitBlocks break open and expose

COMPLAINT

magnets, 2 prior CPSC Safety Alerts, 29 prior CPSC Recall Alerts, the NASPGHAN presentation, and myriad medical articles regarding the dangers of children ingesting magnets from their toys, and with the knowledge that children frequently put toys in their mouths, especially brightly colored ones like the Subject Product.

71. Defendants, and each of them, with despicable conduct and a willful and conscious disregard for the safety of consumers, intentionally misrepresented to Plaintiff's mother with the intention of depriving Plaintiff of his legal rights and property that the Subject DigitBlocks were "crafted with soft, round edges" when the Defendants, and each of them, concealed their knowledge of written notices and reviews documenting that DigitBlocks break open and expose magnets, 2 prior CPSC Safety Alerts, 29 prior CPSC Recall Alerts, the NASPGHAN presentation, and myriad medical articles regarding the dangers of children ingesting magnets from their toys, and with the knowledge that children frequently put toys in their mouths, especially those with soft, round edges.

## FIRST CAUSE OF ACTION
*(FOR NEGLIGENCE BY PLAINTIFF AGAINST ALL DEFENDANTS)*

72. Plaintiff hereby incorporates by reference all previous paragraphs of this Complaint as though fully set forth herein.

28
COMPLAINT

73. DEFENDANTS, and each of them, were and are engaged in the business of formulating, researching, developing, manufacturing, fabricating, designing, producing, creating, modifying, labeling, assembling, testing, distributing, leasing, buying, selling, supplying, inspecting, servicing, repairing, advertising, marketing, promoting, warranting, re-branding, manufacturing for others, packaging, providing use instructions and warnings for, and conducting post-sale monitoring for the DigitBlocks.

74. DEFENDANTS, and each of them, had a duty to exercise due care formulating, researching, developing, manufacturing, fabricating, designing, producing, creating, modifying, labeling, assembling, testing, distributing, leasing, buying, selling, supplying, inspecting, servicing, repairing, advertising, marketing, promoting, warranting, re-branding, manufacturing for others, packaging, providing use instructions and warnings for, and conducting post-sale monitoring for the DigitBlocks, and DEFENDANTS, and each of them, breached said duty of due care.

75. DEFENDANTS, and each of them, negligently and carelessly formulated, researched, manufactured, fabricated, designed, modified, tested or failed to test, abated or failed to abate, warned or failed to warn of the health hazards, failed to instruct, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation,

29

COMPLAINT

repaired, marketed, warranted, re-branded, manufactured for others, packaged, advertised, provided use instructions and warnings for, and conducted post-sale monitoring of the DigitBlocks so that the DigitBlocks failed and caused personal injuries to users, consumers, workers, bystanders, and others, including Minor Plaintiff herein while being used in a manner that was reasonably foreseeable, thereby rendering the Subject Product and the dangerous for their intended uses.

76. DEFENDANTS, and each of them, knew, or in the exercise of due care should have known, that the failure to exercise due care in the formulating, researching, testing, manufacturing, fabricating, designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, servicing, installing, contracting for installation, provision of warnings, provision of instructions, repairing, marketing, warranting, re-branding, manufacturing for others, packaging, advertising, providing warnings and use instructions, and conducting post-sale monitoring of the Subject Product would cause, or would foreseeably result in, harm to intended and foreseeable users and bystanders including Minor Plaintiff herein.

77. Specifically, and without limitation, DEFENDANTS, and each of them, were negligent in the formulating, researching, testing, manufacturing, fabricating, designing, modifying, labeling, assembling, distributing, leasing, buying,

COMPLAINT

offering for sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing, marketing, warranting, re-branding, testing, warning, provision of instructions, manufacturing for others, packaging, advertising, providing use instructions and warnings and conducting post-sale monitoring the Subject Product in that they failed to ensure that the Subject Product would not fail when used as intended by or in a manner reasonably foreseeable to DEFENDANTS, and each of them, thereby posing a risk of injury and so to actually cause injury as complained of herein.

78. A manufacturer, seller and/or distributor of a product is under a duty to exercise reasonable care in its design of a product so that it can be safely used as intended by the buyer and/or consumer. (*Williams v. Beechnut Nutrition Corp.* (1986) 185 Cal.App.3d 135 at 141).  This duty extends to all persons within the range or zone of potential danger.

79. DEFENDANTS, and each of them, and each of them, owed a duty to Minor Plaintiff, to exercise reasonable care in the design of the Subject Product so that the Subject Product could be safely used as intended.  DEFENDANTS, and each of them, were engaged in the business of designing, manufacturing, assembling, distributing, selling, testing, instructing, warning, and otherwise placing into the stream of commerce, DigitBlocks, including the Subject Product, for sale and use by members of the general public, and as such,

31

COMPLAINT

DEFENDANTS, and each of them, owed a duty to the general public and to Plaintiff, to produce, design, manufacture, assemble, distribute, sell and otherwise place into the stream of commerce products, including the Subject Product, that were and are safe for their intended and foreseeable use, and free from defects.

80. DEFENDANTS, and each of them, were engaged in the business of designing, manufacturing, assembling, testing, inspecting, warning, distributing, promoting, and selling for retail to members of the general public the Subject Product, which was sold with knowledge that same would be purchased and used without inspection for defects.

81. DEFENDANTS, and each of them, were engaged in the business of designing, marketing and otherwise placing into the stream of commerce said Subject Product for sale and use by members of the general public, and as such Defendants, and each of them, owed the general public and Plaintiff, a duty to design, market, promote and otherwise place into the stream of commerce DigitBlocks that are safe for their intended and foreseeable use.

82. DEFENDANTS, and each of them, negligently produced, manufactured, assembled, designed, tested, failed to warn, failed to instruct, distributed, marketed and sold the Subject Product in a defective and dangerous condition as described at length, hereinabove.

COMPLAINT

83. DEFENDANTS, and each of them, breached their duty to the public and to Plaintiff, by failing to design, assemble, test, manufacture, warn, instruct and otherwise fabricate the Subject Product so as to avoid its unsafe and hazardous operational characteristics and safety defects, amongst others.

84. As a direct and proximate result of the negligence of DEFENDANTS, and each of them, as set forth above, Minor Plaintiff, O.S., suffered severe and permanent injuries, including but not limited to, intestinal perforation, infection, prolonged hospitalization, general anesthesia surgery, and permanent injury to his intestines and gastrointestinal system. Minor Plaintiff's medical expenses incurred to date exceed $200,000. He will require future care, including surgeries and rehabilitation.

85. As a direct and proximate result of the aforesaid negligence of DEFENDANTS, and each of them, as set forth above, Minor Plaintiff has suffered permanent injuries to his person, body and health, all to his general damage in an amount in excess of the minimum jurisdictional limits of the above-entitled court.

86. As a direct and proximate result of the aforesaid negligence of DEFENDANTS, and each of them, as set forth above, Minor Plaintiff has incurred liability for physicians, surgeons, nurses, hospital care, medicine, hospices, X-rays and other medical treatment. The amount of Minor Plaintiff's medical expenses exceeds $200,000, and the exact amount is currently unknown to Minor Plaintiff who

COMPLAINT

prays leave to amend this Complaint accordingly when the true and exact amount thereof is ascertained.

87. As a further direct and proximate result of the negligence of DEFENDANTS, and each of them, as set forth above, Minor Plaintiff will be required to and will seek additional future medical care and assistance for treatment of his injuries and will thereby incur additional medical and other related expenses for care of his injuries.  The true and exact amount of his future medical expenses is unknown to Minor Plaintiff at this time and Minor Plaintiff prays leave to amend this Complaint accordingly when the true and exact amount thereof is ascertained.

88. As a result of his injuries, Minor Plaintiff will suffer a loss of future earnings and earnings capacity. Minor Plaintiff is informed and believes, and thereon alleges, that he will be permanently incapacitated to some extent and unable to perform certain types of work activities, all to Minor Plaintiff's damage in an amount which is at present unascertained.  Minor Plaintiff will pray leave of Court to show the total amount of his loss of earnings capacity at the time of trial.

### SECOND CAUSE OF ACTION
*(FOR STRICT PRODUCT LIABILITY BY PLAINTIFF AGAINST ALL DEFENDANTS)*

89. Plaintiff hereby incorporates herein by reference each of the preceding paragraphs of this Complaint as though fully set forth herein.

COMPLAINT

90. DEFENDANTS, and each of them, knew and intended that the Subject Product would be used without inspection for defects therein or in any of its component parts and without knowledge of the hazards involved in such use.

91. DEFENDANTS, and each of them, were and are engaged in the business of formulating, researching, developing, manufacturing, fabricating, designing, producing, creating, modifying, labeling, assembling, testing, distributing, leasing, buying, selling, supplying, inspecting, servicing, repairing, advertising, marketing, promoting, warranting, re-branding, manufacturing for others, packaging, providing use instructions and warnings for, and conducting post-sale monitoring for the DigitBlocks, referenced hereinabove and, as such, are strictly liable in tort for the defects and deficiencies herein discussed which caused injury to Plaintiff as alleged herein.

92. At all times herein mentioned, the Subject Product was defective and dangerous, both in manufacture and in design, thereby rendering the Subject Product unsafe for its intended use and the defects were a cause of injury to Minor Plaintiff herein.

93. The Subject Product was and is unsafe for its intended purpose in that it failed unexpectedly, catastrophically and without warning when used as instructed by DEFENDANTS, and each of them, or when used in a manner reasonably foreseeable to DEFENDANTS, and each of them, thereby causing serious and

35

COMPLAINT

permanent injuries such as those suffered by Minor Plaintiff herein.  The defect existed in the Subject Product at the time it left the possession of the DEFENDANTS, and each of them.  Said Subject Product did, in fact, cause personal injuries, including those suffered by Plaintiff herein while being used in a reasonably foreseeable manner, thereby rendering the same defective, unsafe, and dangerous for use.

94.  At all times mentioned herein, the Subject Product failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner, and/or the risk of danger inherent in its design outweighed the benefits of said substance and products.

95.  At all times mentioned herein, the foreseeable use of the Subject product involved a substantial danger not readily recognizable to an ordinary user, consumer, or bystander, including Minor Plaintiff herein, but which danger was known or knowable to DEFENDANTS, and each of them, who failed to adequately warn of the substantial danger.

96.  At the time of the incident complained of, the Subject Product was in substantially the same condition as it was when it left possession of DEFENDANTS, and each of them.

97.  At the times and places mentioned herein, DEFENDANTS, and each of them knew or should have known at the time said Subject Product left their

COMPLAINT

possession, that the Subject Product was defective in design and manufacture, that it did not meet users' and ordinary consumers' reasonable expectations for safety when used in a reasonably foreseeable manner, and was dangerous, defective, unfit and unsafe for its intended use and that said condition was likely to fail catastrophically as described at length hereinabove, when used in a foreseeable manner, and not properly and adequately tested or inspected.

98. The Subject Product had associated deficits, risks and defects, including but not limited to, its defective design, its lack of sufficient warnings and/or use instructions, and those additional items enumerated hereinabove.

99. These associated deficits, risks and defects were known or knowable by DEFENDANTS, and each of them, via the use and employ of scientific knowledge available at the time of design, manufacture, testing, warning and distribution of the Subject Product.

100. The associated risks, deficits, and defects of the Subject Product presented a substantial danger to users of the product that ordinary consumers would not have recognized or otherwise anticipated these associated risks.

101. DEFENDANTS, and each of them, further failed to warn of the potential risks and hazards associated with the Subject Product when used in a way that was reasonably foreseeable to DEFENDANTS, and each of them.  Any warnings provided were inadequate, defective and inappropriate. This lack of sufficient

COMPLAINT

use instructions and/or warnings was a substantial factor in causing injuries and damage to Minor Plaintiff, as herein alleged.

102. At the times and places mentioned herein, DEFENDANTS, and each of them, knew or should have known at the time the Subject Product left said defendants' possession, that the Subject Product was defective in its warnings, design and manufacture, likely to perform unsafely in a manner unanticipated by a prudent user, and having such knowledge, DEFENDANTS, and each of them, should have used reasonable care to warn, or give adequate use instructions and warning of the Subject Product's defects and deficits in design and operational characteristics to those intending to use said the Subject Product in the manner in which it was intended to be used.

103. At all times and places mentioned herein, DEFENDANTS, and each of them, failed to use reasonable care to warn, give adequate use instruction or warning to provide facts describing the Subject Product's dangerous propensities to those whom they could expect to use the product or be endangered by its probable use, and such deficits and defects as illustrated hereinabove were a substantial factor in causing injury and harm to Minor Plaintiff. The foreseeable risks of catastrophic failure associated with the design of the Subject Product outweigh the benefits associated with the Subject Product.

104. As a direct and proximate result of the conduct of DEFENDANTS, and each of

38

COMPLAINT

them, as set forth above, Minor Plaintiff, O.S., suffered severe and permanent injuries, including but not limited to, intestinal perforation, infection, prolonged hospitalization, general anesthesia surgery, and permanent injury to his intestines and gastrointestinal system. Minor Plaintiff's medical expenses incurred to date exceed $200,000. He will require future care, including surgeries and rehabilitation.

105. As a direct and proximate result of the aforesaid conduct of DEFENDANTS, and each of them, as set forth above, Minor Plaintiff has suffered permanent injuries to his person, body and health, all to his general damage in an amount in excess of the minimum jurisdictional limits of the above-entitled court.

106. As a direct and proximate result of the aforesaid conduct of DEFENDANTS, and each of them, as set forth above, Minor Plaintiff has incurred liability for physicians, surgeons, nurses, hospital care, medicine, hospices, X-rays and other medical treatment. The amount of Minor Plaintiff's medical expenses exceeds $200,000, and the exact amount is currently unknown to Minor Plaintiff who prays leave to amend this Complaint accordingly when the true and exact amount thereof is ascertained.

107. As a further direct and proximate result of the conduct of DEFENDANTS, and each of them, as set forth above, Minor Plaintiff will be required to and will seek additional future medical care and assistance for treatment of his injuries

COMPLAINT

and will thereby incur additional medical and other related expenses for care of his injuries. The true and exact amount of his future medical expenses is unknown to Minor Plaintiff at this time and Minor Plaintiff prays leave to amend this Complaint accordingly when the true and exact amount thereof is ascertained.

108. As a result of his injuries, Minor Plaintiff will suffer a loss of future earnings and earnings capacity. Minor Plaintiff is informed and believes, and thereon alleges, that he will be permanently incapacitated to some extent and unable to perform certain types of work activities, all to Minor Plaintiff's damage in an amount which is at present unascertained. Minor Plaintiff will pray leave of Court to show the total amount of his loss of earnings capacity at the time of trial.

**THIRD CAUSE OF ACTION**
*(FOR BREACH OF IMPLIED WARRANTY BY PLAINTIFF AGAINST ALL DEFENDANTS)*

109. Plaintiff hereby incorporates herein by reference each of the preceding paragraphs of this Complaint as though fully set forth herein.

110. Plaintiff, DAISYE SUDURAN, and Natural Parent and Gurdian of the Minor, O.S., purchased the Subject Product on behalf of and for the use by, Minor Plaintiff, O.S., which was manufactured and placed into the stream of commerce by DEFENDANTS, and each of them.

40

COMPLAINT

111. At all times mentioned herein, DEFENDANTS, and each of them, were and are corporations engaged in the business of marketing, designing, manufacturing, fabricating, distributing and selling of the DigitBlocks for the sale and use by members of the public, including Plaintiff, DAISYE SUDURAN, and Natural Parent and Gurdian of the Minor, O.S.

112. The Subject Product was not of the same quality as those generally acceptable in the trade, was not fit for the ordinary purposes for which such a product is used, was not adequately labeled as such and did not measure up to the promises or facts stated in the sales literature and communications by and from DEFENDANTS, and each of them.

113. DEFENDANTS, and each of them, impliedly warranted that the Subject Product, which DEFENDANTS, and each of them, designed, manufactured, assembled, promoted and sold to Plaintiff, was merchantable and fit and safe for ordinary use.

114. DEFENDANTS, and each of them, further impliedly warranted that the Subject Product, which DEFENDANTS, and each of them, designed, manufactured, assembled, promoted and sold to Plaintiff, was fit for the particular purposes for which it was intended and sold.

115. Contrary to these implied warranties, the Subject Product was defective, unmerchantable and unfit for its ordinary use when sold, and unfit for the

41

COMPLAINT

particular purpose for which it was sold, and as a result, caused severe and permanent injury to Minor Plaintiff as herein described.

116. As a direct and proximate result of the conduct of DEFENDANTS, and each of them, as set forth above, Minor Plaintiff, O.S., suffered severe and permanent injuries, including but not limited to, intestinal perforation, infection, prolonged hospitalization, general anesthesia surgery, and permanent injury to his intestines and gastrointestinal system. Minor Plaintiff's medical expenses incurred to date exceed $200,000.  He will require future care, including surgeries and rehabilitation.

117. As a direct and proximate result of the aforesaid conduct of DEFENDANTS, and each of them, as set forth above, Minor Plaintiff has suffered permanent injuries to his person, body and health, all to his general damage in an amount in excess of the minimum jurisdictional limits of the above-entitled court.

118. As a direct and proximate result of the aforesaid conduct of DEFENDANTS, and each of them, as set forth above, Minor Plaintiff has incurred liability for physicians, surgeons, nurses, hospital care, medicine, hospices, X-rays and other medical treatment. The amount of Minor Plaintiff's medical expenses exceeds $200,000, and the exact amount is currently unknown to Minor Plaintiff who prays leave to amend this Complaint accordingly when the true and exact amount thereof is ascertained.

COMPLAINT

119. As a further direct and proximate result of the conduct of DEFENDANTS, and each of them, as set forth above, Minor Plaintiff will be required to and will seek additional future medical care and assistance for treatment of his injuries and will thereby incur additional medical and other related expenses for care of his injuries.  The true and exact amount of his future medical expenses is unknown to Minor Plaintiff at this time and Minor Plaintiff prays leave to amend this Complaint accordingly when the true and exact amount thereof is ascertained.

120. As a result of his injuries, Minor Plaintiff will suffer a loss of future earnings and earnings capacity. Minor Plaintiff is informed and believes, and thereon alleges, that he will be permanently incapacitated to some extent and unable to perform certain types of work activities, all to Minor Plaintiff's damage in an amount which is at present unascertained.  Minor Plaintiff will pray leave of Court to show the total amount of his loss of earnings capacity at the time of trial.

### FOURTH CAUSE OF ACTION
*(NEGLIGENCE - FAILURE TO RECALL/RETROFIT BY PLAINTIFF AGAINST ALL DEFENDANTS)*

121. Plaintiff hereby incorporates herein by reference each of the preceding paragraphs of this Complaint as though fully set forth herein.

122. Prior to, on, and after the date of Minor Plaintiff's injuries, and at all relevant times, DEFENDANTS, and each of them, designed, manufactured, sold, and

43

COMPLAINT

marketed the Subject Product for use by consumers, such as Plaintiff, in the United States. Prior to, on, and after the date of Minor Plaintiff's injuries, and at all relevant times, DEFENDANTS, and each of them, knew or reasonably should have known that the Subject Product and its warnings were dangerous or was likely to be dangerous when used in a reasonably foreseeable manner.

123. Prior to, on, and after the date of Minor Plaintiff's injuries, and at all relevant times, DEFENDANTS, and each of them, became aware of the defects of the Subject Product, including but not limited to the proclivity of DigitBlocks to catastrophically fail and cause severe injuries to users who used the DigitBlocks in an intended or reasonably foreseeable manner.

124. DEFENDANTS, and each of them, failed to recall, retrofit, or warn consumers about the danger of DigitBlocks prior to, on, and after the date of Minor Plaintiff's injuries.

125. In light of the severity and amount of the complaints transmitted to DEFENDANTS, and each of them, and the additional available data, reasonable manufacturers and distributors under the same or similar circumstances would have recalled or retrofitted the Subject Product and would thereby have avoided and prevented harm to children, including Minor Plaintiff, O.S.

126. As a direct and proximate result of the above-referenced negligent failure to recall or retrofit, Minor Plaintiff, O.S., suffered the injuries described herein.

44

COMPLAINT

127. The negligent failure of DEFENDANTS, and each of them, to recall or retrofit the Subject Product and their failure to furnish timely and adequate warnings were substantial factors in causing Minor Plaintiff's injuries and damages, as described herein.

128. As a direct and proximate result of the conduct of DEFENDANTS, and each of them, as set forth above, Minor Plaintiff, O.S., suffered severe and permanent injuries, including but not limited to, intestinal perforation, infection, prolonged hospitalization, general anesthesia surgery, and permanent injury to his intestines and gastrointestinal system. Minor Plaintiff's medical expenses incurred to date exceed $200,000.  He will require future care, including surgeries and rehabilitation.

129. As a direct and proximate result of the aforesaid conduct of DEFENDANTS, and each of them, as set forth above, Minor Plaintiff has suffered permanent injuries to his person, body and health, all to his general damage in an amount in excess of the minimum jurisdictional limits of the above-entitled court.

130. As a direct and proximate result of the aforesaid conduct of DEFENDANTS, and each of them, as set forth above, Minor Plaintiff has incurred liability for physicians, surgeons, nurses, hospital care, medicine, hospices, X-rays and other medical treatment. The amount of Minor Plaintiff's medical expenses exceeds $200,000, and the exact amount is currently unknown to Minor Plaintiff who

COMPLAINT

prays leave to amend this Complaint accordingly when the true and exact amount thereof is ascertained.

131. As a further direct and proximate result of the conduct of DEFENDANTS, and each of them, as set forth above, Minor Plaintiff will be required to and will seek additional future medical care and assistance for treatment of his injuries and will thereby incur additional medical and other related expenses for care of his injuries.  The true and exact amount of his future medical expenses is unknown to Minor Plaintiff at this time and Minor Plaintiff prays leave to amend this Complaint accordingly when the true and exact amount thereof is ascertained.

132. As a result of his injuries, Minor Plaintiff will suffer a loss of future earnings and earnings capacity. Minor Plaintiff is informed and believes, and thereon alleges, that he will be permanently incapacitated to some extent and unable to perform certain types of work activities, all to Minor Plaintiff's damage in an amount which is at present unascertained.  Minor Plaintiff will pray leave of Court to show the total amount of his loss of earnings capacity at the time of trial.

///

///

46

COMPLAINT

**WHEREFORE**, Plaintiff prays for judgment against Defendants, and each of them, as follows:

1. For general damages according to proof;

2. For past and future pecuniary and economic losses, including loss of income, wages, support, and earning potential according to proof;

3. For past and future medical and related expenses according to proof;

4. For punitive damages according to proof;

5. For cost of suit incurred herein; and

6. For such other and further relief as the Court may deem just and proper.

DATED: August 6, 2024

**SHOOP | APLC**

By: _/s/ David R. Shoop_____
David R. Shoop
Thomas S. Alch
9701 Wilshire Blvd., Suite 950
Beverly Hills, CA 90212
Telephone: (310) 620-9533
Facsimile: (310) 620-6330
david.shoop@shooplaw.com
thomas.alch@shooplaw.com
***Attorneys for Plaintiff***, *Daisye Suduran, Natural Parent and Guardian of the Minor, O.S.*

47

COMPLAINT

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury as to all issues so triable.

DATED: August 6, 2024                    **SHOOP | APLC**


By: _/s/ David R. Shoop_____
     David R. Shoop
     Thomas S. Alch
     9701 Wilshire Blvd., Suite 950
     Beverly Hills, CA 90212
     Telephone: (310) 620-9533
     Facsimile: (310) 620-6330
     david.shoop@shooplaw.com
     thomas.alch@shooplaw.com
     ***Attorneys for Plaintiff,*** *Daisye Suduran, Natural Parent and Guardian of the Minor, O.S.*

COMPLAINT